UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                            CASE NO. 18-11238

PRESTON J. AND GAYLE E.
GRUNDMEYER                                        SECTION "B"

      DEBTORS                                                CHAPTER 7

## **MEMORANDUM OPINION**

This matter came before the court as a hearing on the motion of the Chapter 7 Trustee to reopen the bankruptcy case, withdraw the report of no distribution, re-appoint the Trustee, and waive the filing fee (P-19). The Trustee alleges in his motion that the debtor has filed a claim in state court related to a product liability suit and that such claim was unscheduled in the debtor's bankruptcy case. Although the Trustee's motion does not actually ask for turnover of funds, the Trustee asks that the case be opened so he can administer funds related to the state court personal injury suit. Because the court finds that under the very specific set of facts presented in this case the debtor's litigation rights are not property of the estate, the motion is denied.

**I.     Background Facts**

The facts which gave rise to this contested matter are not seriously disputed, and the court finds them to be as follows. The debtors, Preston and Gayle Grundmeyer, filed their petition for relief under Chapter 7 of the U.S. Bankruptcy Code on May 14, 2018. The Trustee filed a notice of disclaimer and abandonment on June 26, 2018, and the debtors received their discharge on August 27, 2018. On August 30, 2018 the case was closed. On March 28, 2019, the Trustee filed his motion to reopen the case alleging that debtor Preston Grundmeyer had filed a lawsuit in state court on December 11, 2018 seeking damages for exposure to benzene and benzene containing products that had caused him to develop Non-Hodgkin's Lymphoma and other

physical injuries. The Trustee also has alleged that as a result of this suit, the debtor will receive a distribution in an amount sufficient for administration, and that the debtor's interest in these claims was not disclosed in his schedules.

The debtors filed an objection to the motion to reopen stating that Mr. Grundmeyer had not received his diagnosis until after the bankruptcy case had closed, so there was no claim to disclose on the bankruptcy schedules. Also, and important to the court's analysis, Mr. Grundmeyer had an unrelated diagnosis of renal cancer prior to the bankruptcy case. As a result of the renal cancer Mr. Grundmeyer received frequent monitoring by his doctors to ensure that if the renal cancer recurred, it would be caught in a timely fashion. The debtors included with their objection copies of medical reports dated January 31, 2018, March 6, 2018, and May 21, 2018, that all showed that as of these dates Mr. Grundmeyer had not yet been diagnosed with the Non-Hodgkin's Lymphoma. Also included was a copy of the September 2018 diagnosis of the Non-Hodgkin's Lymphoma. The debtors also included a copy of the state court suit, which alleges that Mr. Grundmeyer was exposed to the products causing his injuries in the 1960s and 1970s, and that he was diagnosed with Non-Hodgkin's Lymphoma on September 24, 2018, and that he learned of the connection between his diagnosis and possible benzene exposure in November 2018. The September 24, 2018 diagnosis occurred after the bankruptcy case was closed on August 30, 2018.

**II.    Legal Analysis**

The Trustee argues that the personal injury claim of Preston Grundmeyer is property of the estate, because it originated in pre-petition exposure to benzene. The debtors argue that the claim is not property of the estate because the Non-Hodgkin's Lymphoma developed post-petition, and the lawsuit could not have been filed until Mr. Grundmeyer sustained damages, i.e.

the time when he developed a medical problem on September 24, 2018 connected with Non-Hodgkin's Lymphoma.

Section 541(a)(1) of the Bankruptcy Code classifies property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." In *Matter of Burgess*, 438 F.3d 493 (5th Cir. 2006), the U.S. Fifth Circuit Court of Appeals stated:

> Thus, the scope of § 541 is broad: that section brings into the estate all of the debtor's legal and equitable interests "wherever located and by whomever held." However, the Code also provides a temporal limitation: property of the estate is determined at "[t]he commencement of the case." The case is commenced, and the estate created, when the bankruptcy petition is filed.

In *Burgess*, the debtor was a farmer who suffered a pre-petition crop loss. Post-petition, the Agricultural Assistance Act of 2003 was passed. Under that Act the debtor qualified for funds to compensate him for his pre-petition crop loss. The Fifth Circuit held that the funds were not the property of the bankruptcy estate because the payment was not property of the estate under § 541(a)(1) or "proceeds" of property of the estate under § 541(a)(6). A rehearing *en banc* was granted and the majority of the court determined the question presented was temporal and posed the question: " When did Burgess acquire a legal interest in the disaster-relief payment? In other words, did the crop loss itself entitle Burgess to the money? Or was it the combination of the Burgess's crop loss and the enactment of the 2003 Act that gave him that interest?"[1] The Fifth Circuit determined that the latter combination of events gave the debtor an interest in the refund. The court held that although the scope of § 541 is broad, bringing into the estate, "all of the debtor's legal and equitable interests wherever located and by whomever held," the Code, "also provides a temporal limitation: property of the estate is determined at the commencement of the case. The case is commenced, and the estate created, when the bankruptcy petition is

---

[1] *In re Burgess,* 438 F.3d at 497.

filed."[2] Because the legislation providing the payment was not enacted until after the debtor had filed for bankruptcy the debtor "had no interest, contingent or otherwise, in the disaster-relief payment when he filed his bankruptcy petition."[3]

In *Burgess,* the Chapter 7 Trustee argued that the disaster relief payments were the property of the bankruptcy estate for two reasons. The Trustee first argued that through the loss of his crop, Burgess had a contingent interest in the post-petition relief payment at the time of the bankruptcy. The Fifth Circuit rejected this argument for two reasons. First, the Supreme Court in *Segal v. Rochelle* used the "sufficiently rooted test" to support its classification of the payment to the debtor as property of the estate.[4] The *Burgess* court held that the "sufficiently rooted test" used in *Segal* had not survived the enactment of the Bankruptcy Code because § 541 clearly defines what is property of the estate.[5] Second, the majority distinguished *Segal* from the situation in *Burgess* because in *Segal* the debtor did have a pre-petition legal interest in the property.[6] In *Segal* the tax legislation in question was enacted before the debtor filed his petition. That legislation, "gave the debtor a *claim* for a tax refund if certain conditions were met. It was the combination of the law and the conditions made legally relevant by the law that conferred on the debtor a prepetition legal interest: the claim for a refund."[7] By contrast, although the crop loss in *Burgess* was suffered pre-petition, the relevant legislation was not passed until after the bankruptcy petition was filed. In reaching this conclusion, the *Burgess* court followed the analysis of the Eighth Circuit in *In re Vote*, the Ninth Circuit in *In re Schmitz*,

---

[2] *Id.* at 496 (internal citations omitted).
[3] *Id* at 503.
[4] *Segal Cotton Products v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).
[5] *In re Burgess,* 438 F.3d at 498. The "sufficiently rooted test" referred to in Burgess is a reference to the former §70(a)(5) of the Bankruptcy Act. Under §70(a) of the Act, whether an asset was included within the estate varied in accordance with (1) an individual examination of the legal nature of the asset, and (2) in light of the purposes of the Bankruptcy Act. *Burgess,* 438 F.3d at 499.
[6] *Burgess,* 438 F.3d at 499.
[7] *Id.*

4

and the Middle District of Georgia in *In re Bracewell*.[8] These courts had determined that the definition of property at the commencement of the case was temporal and that "a mere hope that crop-disaster-relief legislation would be enacted" was not enough to constitute an interest, "contingent or otherwise," at the time of filing.[9] The Trustee in *Burgess* also argued that the crop loss itself was property of the estate and the relief payment constituted proceeds of that property. The Fifth Circuit rejected this argument as well."[10] *Burgess* was a close decision, and the minority issued a lengthy dissent that pointed out, among other things, that under Louisiana state law the crop insurance payment received by the debtor would have been proceeds (as defined by the Louisiana version of the UCC) that should have come into the estate under § 541(a)(6). The majority in *Burgess* rejected this analysis.

The bankruptcy cases cited by the debtor are instructive as to how other bankruptcy courts have generally ruled when a debtor has a tort claim that may include both pre and post-petition elements. Many of the cases that address whether a personal injury claim is property of the estate look to when the cause of action accrues, and this is determined by underlying state law.[11] Then many of them look to *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.ed.2d. 428 (1966), to determine whether the property interest existed before the debtor filed the bankruptcy petition.[12]

---

[8] *In re Vote*, 276 F.3d 1024 (8th Cir. 2002); *In re Schmitz*, 270 F.3d 1254 (9th Cir. 2001); *In re Bracewell*, 322 B.R. 698 (M.D. Ga. 2005).
[9] *Burgess,* 438 F.3d at 503.
[10] *Id.*
[11] *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (property interests are created and defined by state law).
[12] *Segal* tells courts to examine whether the interest at stake is sufficiently rooted in the debtor's pre-bankruptcy past so as to require it be deemed property of the estate. Although many courts looking at this issue conduct a *Segal* analysis, courts in the Fifth Circuit do not, because, as stated above, the Fifth Circuit held in *In re Burgess*, 438 F.3d 493, 498 (5th Cir. 2006) that *Segal's* "sufficiently rooted" test did not survive the enactment of the Bankruptcy Code.

*In re Purcell*, 573 B.R. 859 (Bankr.D.Kan. 2017) concerned a debtor who had a personal injury claim stemming from a faulty pelvic mesh device that was implanted after the debtor received her discharge, but while the bankruptcy case was still open. The debtor did not have an injury from the device until over a year after the case had closed, however, and so the court found that under Kansas law, which requires an injury to be "reasonably ascertainable to the injured party" for the statute of limitations to begin to run on a tort claim, the debtor's personal injury claim was not property of the estate. The *Purcell* court reasoned that because the device was not implanted until three years after the Chapter 13 case was filed, and after the debtor received her discharge, but before the case could be closed, under both Kansas law and the *Segal* test, the debtor's interest in the personal injury suit was not property of the estate.

In *Mendelsohn v. Ross,* 251 F.Supp.3d 518 (E.D.N.Y. 2017) the court also found that the debtor's interest in settlement proceeds from a medical device implanted pre-petition that caused injury and was removed post-petition was not property of the estate. The *Ross* case analyzed the matter using the *Segal* test, and determined that because the debtor had not suffered an injury pre-petition, the interest in the settlement proceeds was not sufficiently rooted in the debtor's pre-bankruptcy past. *See also In re Harber*, 553 B.R. 522 (Bankr.W.D.Pa. 2016), where the court held that the most critical elements of the debtor's claim had not taken root as of the time her bankruptcy was filed, including that she had not sustained an injury, had not incurred any damages, did not exhibit any symptoms pre-petition, and did not purposely delay any medical evaluation; *In re Vasquez*, 581 B.R. 59 (Bankr.D. Vt. 2018) (defective medical device implanted pre-petition, but debtor did not discover that device was cause of medical problems until four years after bankruptcy case was filed, so under Vermont law, personal injury suit was not property of the estate).

Other cases have found the personal injury action to be property of the estate. These include *In re Carroll,* 586 B.R. 775 (Bankr.E.D.Cal. 2018) (debtor had faulty medical device implanted pre-petition, and suffered injury pre-petition but did not learn of cause of action until several years post-petition when FDA issued a warning about the device, but date of injury not date of knowledge was determinative, so suit was property of the estate) and *In re Richards,* 249 B.R. 859 (Bankr.E.D.Mich. 2000) (time when claim accrues under state law is not the proper test, rather *Segal's* "sufficiently rooted in pre-bankruptcy past" inquiry is proper, and thus debtor's tort suit for asbestosis stemming from exposure in the 1960s and 70s but diagnosed post-petition was sufficiently rooted in the past to qualify as property of the estate).

Here, the Trustee cites *Cole v. Celotex Corp.,* 599 So.2d 1058 (La. 1992) and *Austin v. Abney Mills, Inc.,* 824 So.2d 1137 (La. 2002) in support of his argument that under Louisiana law, the debtor's cause of action accrued pre-petition, and is therefore property of the estate. In *Cole*, the Louisiana Supreme Court examined the effect of a comparative fault law passed by the state legislature on the claims of refinery workers who had been exposed to asbestos. The law, which would have limited the potential recovery to which the workers were entitled, was passed after the workers had been exposed to the asbestos, but before their injuries had manifested. In determining that the comparative fault law did not apply retroactively, the court discussed how legal concepts for handling traditional tort claims were inadequate for use in cases dealing with long-term exposure to asbestos because of the lengthy period between exposure and the manifestation of an injury. The *Cole* court concluded that "the key relevant events giving rise to a claim in long-latency occupational disease cases are the repeated tortious exposures resulting in continuous on-going damages, although the disease may not be considered contracted or manifested until later." This reasoning provided the basis for the court to further decide that

7

when the tortious exposure occurred before the new law's effective date, the new law could not apply retroactively, thus allowing the injured workers to assert their claims without the limitations imposed by the new law.

*Abney Mills*, the other case relied upon by the Trsutee, involved a tort suit filed against the plaintiff's former employers and the executive officers of those former employers. The defendants moved for summary judgment invoking their immunity under Louisiana statutes concerning workers' compensation that limited employee's recovery for certain occupational diseases. The plaintiff suffered from mesothelioma as a result of his exposure to asbestos and asbestos containing materials during the course of his employment with the defendants. The Louisiana workers' compensation statute, prior to 1975 did not include mesothelioma as a disease covered by the statute, but in 1975 the statute was amended so that it would cover a much broader array of occupational diseases. Thus, much like in the *Cole* case, the Louisiana Supreme Court was again faced with the question of whether a law could retroactively limit the plaintiff's recovery. The *Abney Mills* case further expanded on the holding of *Cole*, by adopting the "significant tortious exposure" theory for determining when a cause of action accrues in long-latency occupational disease cases. This allowed the court to hold that the workers' claims had accrued at the time of exposure, thus prohibiting retroactive application of the workers' compensation law.

These cases lead to an interesting interplay in Louisiana law between the time a cause of action accrues, and the time when prescription begins to run. The holdings in the *Cole* and *Abney Mills* cases tell us that the cause of action accrues when the plaintiff's exposures are "significant and such exposures later result in the manifestation of damages."[13] But the plaintiff who has had

---

[13] *Austin v. Abney Mills, Inc.*, 824 So.2d 1137, 1153-54 (La. 2002).

a cause of action accrue under this rule still is not able to file suit until damages have manifested, because under Louisiana law, three elements are required for a tort claim: fault, causation and damages. Thus, it is not until the damages have actually occurred that the suit may be filed, and prescription begins to run. If the damages never manifest, then there is no cause of action to be pursued. This problem is pointed out by the dissent in *Abney Mills*:

> Another problem is the majority's holding that a party's cause of action can accrue before he has a right to assert it. If the plaintiff had tried to bring his cause of action for mesothelioma at the time the majority says it accrues, i.e., upon significant exposure to asbestos which according to the majority could have occurred over 27 years ago (prior to 1975), his case would have been thrown out of court. While it may be true that a cause of action can arise before the party sustains all of the damages occasioned by the defendant's negligence, the party still has to have some cognizable, as opposed to speculative, damages before his cause of action accrues.[14]

The majority of the bankruptcy cases that address whether personal injury tort claims are property of the estate, come to the same conclusion, even though they may get there in different ways. Even where some of the tortious conduct may have occurred pre-petition, where the damages have not manifested until post-petition, the cause of action is not property of the estate. The court finds that this comports with the result reached in *Burgess*. There, the legislation giving the debtor a right to payment for his lost crops was enacted post-petition, so the payment was not property of the estate. Here, the debtor was not diagnosed with Non-Hodgkins Lymphoma as of the date of the filing, but instead was not diagnosed until after his bankruptcy case had closed. In another case, with different facts, it might not be so easy to ascertain whether the debtor had actually contracted the disease pre or post-petition. But it is clear that here, with the number of medical exams right before the debtor filed his petition, that he did not receive a diagnosis of the disease until after the petition date. Accordingly, the court holds that any

---

[14] *Austin v. Abney Mills, Inc.*, 824 So.2d 1137, 1160 (La. 2002)(internal citations omitted).

settlement funds the debtor may receive are not property of the estate. The Trustee's motion to reopen the case is denied. A separate order will be entered.

New Orleans, Louisiana, July 24, 2019.

_____
Jerry A. Brown
U.S. Bankruptcy Judge